O

**No JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Contessa Premium Foods, Inc. and Zurich American Insurance Company,<br><br>   Plaintiff,<br><br>   v.<br><br>CST Lines, Inc.; Far East Carrier LLC; and Does 1 through 15,<br><br>   Defendants. | CV 10-7426 (FFMx)<br><br>**ORDER re: Plaintiffs Contessa Premium Foods and Zurich American Insurance Company's Motion for Summary Judgment [19], and Defendant CST Lines, Inc.'s Motion for Summary Judgement [20]** |

   On July 15, 2011, Plaintiffs Contessa Premium Foods, Inc. ("Contessa") and Zurich American Insurance Company ("Zurich") filed the present motion for Summary Judgment, or in the alternative, Summary Adjudication [19]. Defendant CST Lines, Inc. ("CST Lines") concurrently filed a Cross-Motion for Summary Judgment [20]. Both motions were set for hearing on August 9, 2011 and taken under submission on August 5, 2011. After considering all of the papers and arguments

1

submitted on these matters, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **GRANTS** Plaintiffs Contessa and Zurich's Motion for Summary Judgment. Furthermore, the Court **DENIES**, in its entirety, Defendant CST Lines's Motion for Summary Judgment.

## I. BACKGROUND

On May 28, 2008, Plaintiff Contessa Premium Foods, Inc. ("Plaintiff Contessa") a producer and distributor of frozen food products, and Defendant CST Lines, Inc. ("Defendant CST Lines"), a federally licensed motor carrier and broker, entered into a Motor Carrier Agreement ("Agreement") to transport 48 pallets of frozen food products ("the shipment") from Plaintiff Contessa's Green Cuisine Plant in Commerce, California to an Indianapolis, Indiana warehouse. Defendant CST Lines agreed to provide temperature controlled transportation for all shipments tendered by Plaintiff Contessa and maintain the reefer units at a constant minus ten degrees Fahrenheit. The Agreement also includes provisions stating that the Carrier (Defendant CST Lines), in the transportation of any shipment on behalf of the Shipper (Plaintiff Contessa), fully assumes liability for any and all loss or damage to the shipment or any portions thereof.

Thereafter, Defendant CST Lines sub-contracted with a separate trucking company, Far East Carrier, LLC ("Far East Carrier"), to pick up, transport, and

1  deliver the shipment pursuant to a broker agreement
2  between Defendant CST Lines and Far East Carrier.[1]
3  Defendant CST Lines instructed Far East Carrier to
4  check-in and sign paperwork as "CST Lines, Inc." when
5  picking up the shipment from Plaintiff Contessa. (Pl.'s
6  Mot. 3).
7       On September 14, 2009, a truck driver employed by
8  Far East Carrier received delivery of the shipment from
9  Plaintiff Contessa's plant in California. At the time
10 of delivery, the truck driver who received the shipment
11 stated on the bill of lading, under the "Trucker Name"
12 line, that he was picking up the goods on behalf of
13 "Far East."
14      Immediately after Far East Carrier picked up the
15 shipment, Plaintiff Contessa faxed Defendant CST Lines
16 a "shipment manifest," which noted that Defendant would
17 receive payment of $4,200 for its transportation
18 services.  Defendant CST Lines directly invoiced
19 Plaintiff Contessa for the entire $4,200 without
20 informing Plaintiff that it had subcontracted the load
21 to Far East Carrier.
22      The frozen food shipment was delivered to the
23 agreed upon location in Indiana, at a temperature which
24 caused damage to the shipment.
25 ///
26 ///
27 ———————————————
28     [1] The Agreement does not contain a provision prohibiting brokering.

Case 2:10-cv-07426-RSWL-FFM Document 40 Filed 08/18/11 Page 4 of 18 Page ID #:640

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (2007).

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The non-moving party is required by Federal Rules of Civil Procedure Rule 56(e)[2] to go beyond the pleadings and designate specific facts showing a genuine issue for trial exists. Id. at 324.

---

[2] The Federal Rules of Civil Procedure were amended on December 01, 2010. Federal Rules of Civil Procedure, Rule 56(e) has now been codified as Federal Rules of Civil Procedure, Rule 56(c).

4

**III. ANALYSIS**

**A. Evidentiary Objections**

As a preliminary matter, in ruling on a Motion for Summary Judgment, the Court considers only evidence that is admissible at trial. Fed. R. Civ. P. 56(c). Here, Defendant CST Lines filed objections to the use of certain declarations and various excerpts of deposition testimony used in support of Plaintiffs' motion. The Motor Carrier Agreement attached to the Deposition Testimony of Defendant's 30(b)(6) designee Christopher Erickson and the Declaration of Jennifer Pedersen are the only pertinent objections the Court considered in its analysis. All other objections are therefore **OVERRULED AS MOOT.**

1. *Objection to the Motor Carrier Agreement*

Defendant CST Lines objects to the Motor Carrier Agreement, attached as Exhibit 2 to the Deposition of Christopher Erickson, on the grounds that it violates the best evidence rule. Declaration of Ian P. Culver ("Culver Decl."), ¶6, Ex. 4. This objection, however, is misguided as the Federal Rules specifically provide that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Here,

Defendant has raised no facts to question the authenticity of the Motor Carrier Agreement. Therefore, the Court **OVERRULES** this objection.

    2. *Objection to the Declaration of Jennifer Pedersen*

Defendant objects to the Declaration of Jennifer Pedersen in its entirety as a "sham affidavit." Under the "sham" affidavit rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). But the Ninth Circuit has advised that the doctrine should be used with caution and reserved for situations that appear to be an effort solely to survive summary judgment. See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005).

The Court finds that any additional information in Jennifer Pedersen's declaration appears to be a result of newly produced evidence, and does not appear to be a tactical attempt to evade an unfavorable summary judgment. Therefore, the Court **OVERRULES** this objection based on the "sham affidavit" rule.

**B.   The Carmack Amendment and Motor Carrier Status**

The Carmack Amendment of the Interstate Commerce

6

Act ("Carmack") imposes liability on motor carriers for all losses relating to goods they transport in interstate commerce. 49 U.S.C. § 14706 (1996); <u>Missouri Pac. R. Co. v. Elmore & Stahl</u>, 377 U.S. 134, 137 (1964). Liability for lost or damaged goods under Carmack, however, does not extend to freight brokers. 49 U.S.C. § 14706; <u>see also</u> <u>PNH Corp. v. Hullquist Corp.</u>, 843 F.2d 586, 590-91 (1st Cir. 1988) (limiting liability under Carmack to carriers). The difference between a carrier and a broker "is often blurry." <u>CGU Intern. Ins. Inc., PLC v. Keyston Lines Corp.</u>, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004). "The crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier." <u>Id.</u> (citing 49 C.F.R. § 371.2(a)).

Thus, as a threshold issue, to obtain summary judgment and subject Defendant CST Lines to Carmack liability, Plaintiffs must show that there are no genuine issues of material fact as to Defendant CST Lines's status as a "Motor Carrier." Plaintiffs contend that Defendant CST Lines is a Motor Carrier. On the other hand, Defendant CST Lines argues that it is a broker and not subject to Carmack liability.

The Court finds that Defendant CST Lines is a Motor Carrier within the definition of Carmack for the following reasons.

///

///

1. *The Motor Carrier Agreement is Evidence that Defendant is a Motor Carrier under Carmack*

Courts have consistently recognized that a party can accept responsibility and become liable under Carmack by signing a Motor Carrier Agreement that identifies the party as a "motor carrier." <u>AIOI Ins. v. Timely Integrated, Inc.</u>, 2009 WL 2474072, at *3 (S.D.N.Y. Aug. 12, 2009) (noting that representation as "carrier" in motor carrier agreement is evidence of motor carrier status); <u>Land O' Lakes, Inc. v. Superior Serv. Transp of Wis., Inc.</u>, F. Supp. 2d 1150, 1154 (E.D. Wis. 2007) (quoting <u>Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.</u>, 211 F.3d 367, 370-71 (7th Cir. 2000)) (same).

Here, there is no genuine dispute that Defendant CST Lines signed a Motor Carrier Agreement with Plaintiff Contessa. Similar to the agreements in both <u>AIOI</u> and <u>Land O'Lakes</u>, this agreement identified Defendant as a "Carrier" and imposed liability on Defendant "for any and all or damage to . . . shipment." Culver Decl., ¶6, Ex. 4. The Court finds that this language in the Motor Carrier Agreement is strong evidence of Defendant CST Line's status as a motor carrier.

Defendant CST Lines argues that the Motor Carrier Agreement should, instead, be read as evidence of its status as a broker because the agreement did not

prohibit Defendant CST Lines from acting as a broker. Even under this constrained reading of the contract, however, the Court finds that Defendant CST Lines was a carrier within the definition provided by Carmack because Defendant identified itself as a "Carrier," accepted responsibility under the contract for damaged goods and "arrang[ed]" for their shipment. See AIOI, 2009 WL 2474072, at *3.

Defendant CST Lines also contends that a motor carrier agreement is not evidence of Carmack liability because matters touching on contract interpretation are more appropriately filed as a claim for breach of contract.

The Court finds Defendant's argument unpersuasive. The existence of a contract in a dispute does not automatically covert the dispute into a breach of contract claim. Here, the purpose of identifying the Motor Carrier Agreement is to establish motor carrier liability under Carmack. Furthermore, requiring Plaintiff to file a breach of contract claim would contradict principles of federal preemption, which provide "that the liability for damage to an interstate shipment is a matter of federal law controlled by federal statutes." Missouri Pac. R. Co., 377 U.S. at 137. As such, the Court finds that Plaintiffs' correctly filed the claim under Carmack, rather than as a breach of contract claim.

## 2. *Defendant CST Lines is a motor carrier because it did not hold itself out as a broker*

Under the Interstate Commerce Act, a freight broker is:

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for transportation.

49 U.S.C. § 13102(2). By contrast, a carrier is "a person providing . . . transportation for compensation." § 13102(12).

An entity has liability under Carmack if the carrier accepts responsibility for ensuring delivery of the goods, "regardless of who actually transported them." CGU, 2004 WL 1047982, at *2; see AIOI, 2009 WL 2474072, at *3 (finding that a party was a motor carrier even though it subcontracted transportation services to another company who damaged the goods). A party will be regarded as a motor carrier under Carmack as long as it provides "transportation for compensation" with "transportation" defined as either directly providing or "arranging for" delivery. 49 U.S.C. § 13102.

The Court finds that Defendant CST Lines was not acting as a "broker" under the Carmack statutory

10

1 definition.  There is no evidence that Defendant CST
2 Lines sold, offered, or held itself out to Plaintiffs
3 as arranging for shipments by others to serve as
4 carriers.  See 49 U.S.C. § 13102(2).  On the contrary,
5 the undisputed facts show that Defendant CST Lines was
6 holding itself out to be the actual "carrier" for the
7 shipment of the goods at issue.  Both the Motor Carrier
8 Agreement and the bill of lading refer to Defendant CST
9 Lines as the motor carrier.  Moreover, the Defendant
10 invoiced Plaintiff Contessa directly for carrier
11 services, which "create an inference that [Defendant]
12 held itself out to Plaintiff as a transporter of
13 property."  Delta Research Corp. v. EMS, Inc., 2005 WL
14 2090890, at *6 (E.D. Mich. Aug. 29, 2005) (finding that
15 direct invoice by Defendant to Plaintiff for the entire
16 loading and transportation process is circumstantial
17 evidence of carrier status).  Defendant CST Lines also
18 never communicated to Plaintiff Contessa that it was
19 planning on subcontracting transportation to another
20 carrier when Plaintiff Contessa continued to bill
21 Defendant CST Lines after the delivery of the goods.
22     As such, the Court finds that Defendant CST Lines
23 never held itself out as a broker and is therefore
24 liable under Carmack.
25 ///
26 ///
27 ///
28 ///

      3.   *Defendant CST Lines is liable under Carmack because Defendant Far East Carrier acted as an agent for Defendant CST Lines*

In the context of Carmack, a broker can be subject to agency liability if its actions "were not limited to arranging transport, but also exerting some measure of control." Hewlett-Packard Co. v. Brother's Trucking Enters., 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005). See also U.S. v. Bonds, 608 F.3d 495, 506 (9th Cir. 2010) (defining an agent as one who "acts on the principals behalf and subject to the principal's control").

Plaintiffs contend that Defendant CST Lines should, at a minimum, be liable under Carmack because Defendant CST Lines exerted control over Defendant Far East Carrier's delivery.

The Court finds Plaintiffs' argument on point. The undisputed facts show that after booking the shipment with Plaintiff Contessa, Defendant CST Lines faxed a load confirmation document with specific handwritten instructions concerning the manner and means by which the load should be carried. The instructions directed Far East Carrier to carry the load at a specified temperature, make daily check calls to Defendant CST Lines, and sign all papers using Defendant CST Lines's name. The Court finds that such detailed instructions are indicative of the control CST Lines exerted over

1  Far East Carrier.
2      Thus, even if Defendant CST Lines never signed the
3  Motor Carrier Agreement categorizing it as a "carrier,"
4  the Court finds that Defendant CST Lines would still
5  be, nonetheless, subject to liability under Carmack
6  through principles of agency.
7      For the reasons above, the Court finds that
8  Defendant CST Lines is a motor carrier under Carmack.

**C.   Establishing Motor Carrier Liability Under Carmack**

The remaining issue is whether Defendant CST Lines, as a motor carrier, is liable under Carmack.  The Court finds that Plaintiffs have met their burden and that there are no genuine issues of material fact as to Defendant's liability under Carmack.

To establish a prima facie case under Carmack, a shipper must demonstrate that (1) its goods were delivered to the carrier in good condition, (2) the goods arrived in damaged condition, and (3) the subsequent condition of the goods resulted in damages. Chubb Group of Ins. Cos. v. H.A. Transp. Sys. Inc., 243 F. Supp. 2d 1064 (C.D. Cal. 2002).  Once a shipper satisfies this burden, the burden of proof then shifts to the carrier to show that it was free of negligence and "that the damage was caused by one of the several expected causes that relieve carriers of liability." Id.; Land O' Lakes, F. Supp. 2d at 1154 (E.D. Wis. 2007) (quoting Allied Tube & Conduit Corp. v. S. Pac.

Transp. Co., 211 F.3d 367, 370-71 (7th Cir. 2000)).

    1. *The First Two Elements: the goods were delivered in good condition and arrived in damaged condition*

The Court finds that the first two elements required under Carmack have been met. Evan Schneider, an employee of Defendant CST Lines, admitted in his Deposition that Defendant Far East Carrier transported the goods at a higher temperature than required and that the goods were damaged due to this mishandling. Such an admission creates an inference that the goods were delivered in good condition and that the goods arrived in a damaged condition, thereby establishing the first two elements required for Carmack liability.

As Plaintiffs have met their burden for these two elements, Defendant CST Lines is required by Federal Rules of Civil Procedure, Rule 56(c), to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324. Defendant CST Lines, however, offers no facts to place Evan Schneider's admission in doubt. Rather, Defendant only contends that the admission by Evan Schneider should not be considered because it was arguably not authorized by Defendant CST Lines. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (citing Marks v. Dep't of Justice, 578 F.2d 261, 263

(9th Cir. 1978)) (finding conclusory allegations unsupported by factual allegations as insufficient to create a triable issue of fact so as to preclude summary judgment).

The Court finds Defendant's assertion unpersuasive. Defendant CST Lines designated Evan Schneider to testify about "the transportation of the shipment," and Evan Schneider's admission described the transportation of the goods at issue.

For the reasons above, the Plaintiff has satisfied the burden of proof on the first two Carmack elements.

2. *The Third Element: Damages*

The Court finds that the third element pertaining to specified damages has also been met as there is no dispute that the shipment of the goods at issue resulted in money damages.

Under Carmack, absent a written agreement limiting liability, a motor carrier is generally liable for the "actual loss or injury to the property." OneBeacon Ins. Co. v. Haas Indus, Inc., 634 F.3d 1092 (9th Cir. 2011) (citing 49 U.S.C. §14706(a)(1)).

Plaintiffs contend that their actual losses total $97,491.97, an amount composed of $87,091.02 in lost profits, $4,380.00 in freight charges, and $5,948.67 in inspection and disposal expenses. Declaration of Jennifer Pedersen ("Pedersen Decl."), ¶15, Ex. H.

(insurance subrogation receipt corroborating this amount).

Out of this total, Defendant CST Lines only disputes the $4,380.00 freight charge, contending that Plaintiff Contessa should not be entitled to this amount because those freight charges were never paid.

The Court finds Defendant CST Lines's argument unpersuasive. It is undisputed that Defendant CST Lines has previously invoiced Plaintiff Contessa for freight charges and have never withdrawn those charges. The Court finds that Plaintiffs are entitled to damages equal to the amount of the freight charge because the $4,380.00 is a debt that still remains on Plaintiff Contessa's account.

In sum, the Court finds that Plaintiffs are entitled to recover $97,491.97, an amount that is subject to a reduction of $4,380.00 if Defendant CST lines withdraws its freight charge invoice.

3.  *Attorneys' Fees*

Plaintiffs assert that they are entitled to attorneys' fees pursuant to an attorneys' fees clause in the Motor Carrier Agreement. In response, Defendant CST Lines objects to attorneys' fees, citing a Fifth Circuit case, which held that Carmack preempts attorneys' fees where a state statute forms the basis of the claim. Accura Sys., Inc. v. Watkins Motor

Lines, Inc., 98 F.3d 874, 876 (5th Cir. 1996).

The Court, however, finds that the case cited by Defendant CST Lines is not on point as Plaintiffs' claim is based on language in the Motor Carrier Agreement rather than a state statute. Mosso, 2007 WL 2746723, at *6 (awarding attorneys' fees in Carmack liability case when bill of lading signed by parties contained an attorneys' fees clause). As such, the Court finds that an award for attorneys' fees is appropriate.

As for the reasonableness of the amount requested by Plaintiff, a district court has a great deal of discretion in determining whether attorneys' fees are reasonable. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). Here, the reasonableness of attorneys' fees requested by the Plaintiffs are not in dispute.

As such, pursuant to the attorneys' fees clause in the Motor Carrier Agreement, the Court awards the Plaintiffs attorneys' fees of $37,387.32.

### IV. CONCLUSION

For the reasons stated above, the Court finds that there is no triable issue of material fact regarding Defendant CST Lines's status as a motor carrier and its liability under the Carmack Amendment. Accordingly, the Court **GRANTS** Plaintiffs Contessa and Zurich's Motion for Summary Judgment and **DENIES** Defendant CST

Lines's Cross-Motion.  The Court awards Plaintiffs damages of $97,419.87 subject to reduction of $4,380.00 if Defendant CST lines withdraws its freight charge invoice.  The Court also awards $37,387.32 in attorneys' fees to Plaintiffs.

DATED: August 18, 2011
**IT IS SO ORDERED.**

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge